Filed 7/31/14  In re Edgar Z. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re EDGAR Z., a Person Coming Under the Juvenile Court Law. | |
| | D063582 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J230986) |
| v. | |
| EDGAR Z., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court found true allegations that Edgar Z., a minor, burglarized a home and stole video games and equipment from that home. The court ordered that Edgar be continued as a ward of the court. On appeal, he contends the juvenile court erred in denying his motion to suppress his incriminating statements to police because (1) he made his initial statements to police during a custodial interrogation without first receiving *Miranda* warnings, in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), (2) his statements after the police administered *Miranda* warnings were inadmissible because the police employed an improper question first and warn later tactic, and (3) his *Miranda* waiver was not knowing, intelligent and voluntary. We agree that Edgar's initial statements to police were improperly obtained during a custodial interrogation. However, the admission of that evidence was harmless because his subsequent statements were made after proper *Miranda* warnings. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Edgar's Police Interview*

In October 2012, someone broke into Noe Rodriguez's apartment and took two video game consoles and video games. (All further date references are to the year 2012.) San Diego Police Officer Monika Horvat investigated the incident. She received information that Edgar, who was 13 years old at the time, was involved in the burglary.

In November, Officer Horvat went to Edgar's middle school and spoke to the assistant principal. The assistant principal informed Officer Horvat that Edgar was in an adjacent office being questioned on an unrelated issue. Edgar was eventually brought into the assistant principal's office. The office had a desk with a chair where the assistant

2

principal sat and a window behind that chair. There were two chairs in front of the desk and another chair elsewhere in the room. Officer Horvat sat in the chair closest to the door and Edgar sat in a chair located between the officer and the assistant principal's chair. The office door was closed but not locked.

Officer Horvat, dressed in a suit, introduced herself to Edgar as "Detective Horvat" and then proceeded to ask Edgar if he could tell her anything about a stolen Playstation. Edgar looked down at the ground and did not respond. Officer Horvat then told Edgar that someone mentioned his name in relation to a residential burglary and again asked if he knew anything about it. Edgar responded, "'No.'"

Officer Horvat continued by asking Edgar if he knew right from wrong. Edgar stated that he did and when asked who taught him the difference, Edgar said his parents did. In response to questions, Edgar stated an example of something wrong was stealing and an example of something right was to "'return all the stuff.'"

Officer Horvat next asked whether Edgar had entered a residence and taken any property without permission. Edgar paused and then stated that he had climbed through an open window, opened the front door to let two friends inside and then removed boxes of video games and Playstation and PSP game consoles. From the time Officer Horvat introduced herself to the time Edgar admitted participating in the burglary, five to ten minutes had elapsed. Officer Horvat described her demeanor as friendly and calm throughout the conversation.

While Edgar remained in the office, Officer Horvat left the room to speak with his mother who had arrived to pick him up. Officer Horvat then returned to the assistant

3

principal's office where she was joined by another officer and advised Edgar of his *Miranda* rights. Specifically, she informed Edgar that he had the right to remain silent, anything he said could be used against him in court, and he had the right to have an attorney present during or before questioning. Edgar stated that he understood all three warnings and was willing to talk to Officer Horvat.

Thereafter, Edgar told Officer Horvat that in the apartment complex where he lived, he checked for open doors. When he came to Rodriguez's apartment, he remembered that he had previously played with Rodriguez's son on a Playstation in the apartment. The front door to Rodriguez's apartment was closed, but Edgar discovered an open window. Edgar entered through the window, opened the door for his friends, and then searched for the Playstation and PSP. Edgar removed those items along with a controller and video games for both consoles.

Officer Horvat accompanied Edgar and his mother to their apartment where Edgar gave Officer Horvat several items of property that he had taken from Rodriguez's apartment.

*Motion to Suppress and Hearing*

Edgar moved to suppress the incriminating statements he had made to police on grounds that he made his initial statements during a custodial interrogation without required *Miranda* warnings, the police employed an improper question first tactic to obtain his subsequent incriminating statements, and his *Miranda* waiver was not knowing, intelligent and voluntary.

After hearing Officer Horvat's testimony and arguments from counsel, the court denied Edgar's suppression motion. In regard to Edgar's pre-*Miranda* warning statements, the court identified factors it considered in determining whether the interrogation was custodial, including that the interview took place in the assistant principal's office with the door closed, Officer Horvat was not in uniform, and the interview lasted five to ten minutes with approximately three questions posed to Edgar. Based on the totality of the circumstances, the court found Edgar's statements were voluntary and admissible.

In considering Edgar's post-*Miranda* warning statements, the court reiterated that Edgar was not in custody when he made his initial incriminating statements to police and thus *Miranda* warnings were not required. The court rejected Edgar's argument that police employed an improper question first tactic to circumvent *Miranda* requirements. Accordingly, the court denied Edgar's request to have his statements suppressed.

DISCUSSION

I. *Edgar's Pre-Miranda Warning Admission*

Edgar argues his initial statements to police should have been suppressed because he made them during a custodial interrogation before he received *Miranda* warnings. Specifically, he contends in light of his age and the totality of circumstances surrounding his interrogation, a reasonable person in his situation would not have felt free to terminate the interrogation and leave. We agree.

In *Miranda*, *supra*, 384 U.S. at p. 444, the United States Supreme Court declared that a person questioned by law enforcement officers after being "taken into custody or

5

otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Statements elicited without complying with this rule are inadmissible for certain purposes in a criminal trial. (See *Stansbury v. California* (1994) 511 U.S. 318, 322; *People v. Nelson* (2012) 53 Cal.4th 367, 374.)

"An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Custody consists of a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. [Citations.] When there has been no formal arrest, the question is how a reasonable person in the defendant's position would have understood his situation. [Citation.] All the circumstances of the interrogation are relevant to this inquiry, including the location, length and form of the interrogation, the degree to which the investigation was focused on the defendant, and whether any indicia of arrest were present." (*People v. Moore* (2011) 51 Cal.4th 386, 394-395; *Yarborough v. Alvarado* (2004) 541 U.S. 652, 663 [courts must examine "'all of the circumstances surrounding the interrogation'" and determine "'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action'"].) "'[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" (*Yarborough v. Alvarado*, at p. 663.)

6

In *J.D.B. v. North Carolina* (2011) 564 U.S. ___ [131 S.Ct. 2394], the Supreme Court held that a child's age can be relevant to the custody determination for purposes of *Miranda* warnings because "[i]n some circumstances, a child's age 'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave.'" (*Id.* at p. ___ [131 S.Ct. at pp. 2402-2403].)  For example, "[a] student—whose presence at school is compulsory and whose disobedience at school is cause for disciplinary action—is in a far different position than, say, a parent volunteer on school grounds to chaperone an event, or an adult from the community on school grounds to attend a basketball game.  Without asking whether the person 'questioned in school' is a 'minor,' [citation], the coercive effect of the schoolhouse setting is unknowable." (*Id.* at p. ___ [131 S.Ct. at p. 2405].)  Thus, the court held inclusion of age as a consideration consistent with the objective nature of the custody analysis, "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer . . . ." (*Id.* at p. ___ [131 S.Ct. at p. 2406].)

"'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact.  [Citation.]  When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a deferential substantial evidence standard" [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave."'" (*People v. Moore*, *supra*, 51 Cal.4th at p. 395.)

Here, to support its ruling that Edgar's initial statements to Officer Horvat were admissible, the trial court found that Edgar's interview took place in the assistant principal's office with the door closed but not locked, Officer Horvat was not in uniform, and the interview lasted only five to ten minutes with approximately three questions posed to Edgar. The trial court referenced defense counsel's position that the court should consider Edgar's age, but it is unclear what role, if any, Edgar's age played in the court's analysis. While we agree with the court's considerations, we conclude that under the totality of circumstances, including Edgar's age, his interrogation was custodial in nature.

Edgar was only 13 years old at the time of his police interview. Officer Horvat was clearly aware of Edgar's young age as she interviewed him at his middle school. Edgar was taken to the assistant principal's office where the office door was closed and Edgar sat in a chair between the assistant principal and Officer Horvat. Officer Horvat introduced herself as a detective and then proceeded to question him. When Edgar failed to respond to Officer Horvat's initial inquiry, she told him that someone mentioned he was connected to a residential burglary and then asked again if he was involved. Edgar denied involvement so Officer Horvat continued her questioning. At no point did Officer Horvat or the assistant principal give Edgar an opportunity to call his mother, tell him he was free to leave, or inform him that he was not obligated to speak to her. In our view, a reasonable 13 year old in Edgar's position would not have felt free to leave the assistant principal's office where the officer asked the door be closed and both the assistant principal and officer were present. A child in Edgar's situation would reasonably believe

8

that his disobedience would subject him to disciplinary action. Under these circumstances, Edgar was in custody for *Miranda* purposes and thus the trial court erred in failing to suppress the statements Edgar made before receiving *Miranda* warnings.

## II. *Edgar's Post-Miranda Warning Admission*

Edgar argues the trial court erred by failing to suppress the statements he made after receiving *Miranda* warnings because Officer Horvat used an improper technique by questioning him before administering *Miranda* warnings and thus even his post-*Miranda* admissions were obtained unlawfully. We disagree.

The United States Supreme Court addressed this issue in *Oregon v. Elstad* (1985) 470 U.S. 298 (*Elstad*). In *Elstad*, police officers went to the defendant's home and questioned him about a burglary without first reading him the *Miranda* warnings. (*Elstad*, at p. 301.) After he admitted being present at the burglary, the officers took him to the police station. One hour later, the officers informed him of his *Miranda* rights. He waived those rights and gave a full statement detailing his role in the crime. (*Elstad*, at pp. 301-302.) The Court held that "[t]hough *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." (*Id.* at p. 309.) "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement," the court found that "subsequent administration of *Miranda* warnings . . . ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." (*Id.* at p. 314.) "The essence of voluntariness is whether the government

9

obtained the statements by physical or psychological coercion such that the defendant's will was overborne." (*United States v. Rith* (10th Cir. 1999) 164 F.3d 1323, 1333.)

The Supreme Court revisited the issue in *Missouri v. Seibert* (2004) 542 U.S. 600 (*Seibert*). Unlike *Elstad*, where the officer's initial failure to warn was an oversight, in *Seibert*, the police "used a two-step questioning technique based on a deliberate violation of *Miranda*." (*Id.* at p. 620 (conc. opn. of Kennedy, J.).) The interview strategy was based on "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession. Although such a statement is generally inadmissible, since taken in violation of [*Miranda*], the interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time." (*Id.* at p. 604.)

In *Seibert*, a plurality of the United States Supreme Court reasoned, "The threshold question in this situation is whether it would be reasonable to find that the warnings could function 'effectively' as *Miranda* requires. There is no doubt about the answer. . . . When the warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.' [Citation.] And it would be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." (*Seibert*, *supra*, 542 U.S. p. 601.)

10

Justice Kennedy concurred, reasoning that if the interrogators deliberately employ the two-step strategy, the trial court must suppress postwarning statements unless the interrogators take curative measures to apprise the defendant of his rights. If the two-step method is not deliberate, the postwarning statements are admissible if voluntarily made. (*Seibert*, *supra*, 542 U.S. at p. 622 (conc. opn. of Kennedy, J.); see also *United States v. Williams* (9th Cir. 2006) 435 F.3d 1148, 1157-1158 [concluding that Justice Kennedy's concurrence in *Seibert* is the court's holding because it is narrowest grounds with which a majority of the court would agree.].)

Deliberateness may be found if "objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." (*United States v. Williams*, *supra*, 435 F.3d at p. 1158.) Objective evidence includes "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." (*Id.* at p. 1159.)

Here, our threshold inquiry is whether Officer Horvat deliberately employed a two-step interrogation tactic to circumvent *Miranda* requirements. If that was the case, the *Seibert* rule applies and Edgar's post-*Miranda* warning statements must be excluded; however, if the two-step procedure was not deliberately used, *Elstad* applies and the postwarned statements were admissible so long as they were voluntarily given.

We agree with the trial court's conclusion that this was not "a *Seibert*-type situation where it was designed to get around *Miranda*." "Unlike *Seibert*, there is no evidence here that [Officer Horvat] w[as] 'following a policy of disregarding the teaching

11

of *Miranda*.'" (*People v. Scott* (2011) 52 Cal.4th 452, 478.)  To the contrary, the prewarning portion of Edgar's interview lasted only five to ten minutes.  Officer Horvat's demeanor was calm and friendly during that time and she only asked Edgar approximately three questions.  We find nothing in the record indicating that Officer Horvat was deliberately physically or psychologically coercive during the pre-*Miranda* warning portion of Edgar's interview.  Accordingly, Edgar's postwarning statements were admissible so long as they were voluntary.

### III.  *Voluntariness of Edgar's Statements*

Edgar argues he did not knowingly, intelligently and voluntarily waive his *Miranda* rights.  Specifically, he contends that because of his limited English comprehension and extreme immaturity, he had "no concept of his right not to incriminate himself."  In making this argument, Edgar relies heavily on two psychological evaluations, which were conducted to determine if he was competent to stand trial.  We reject Edgar's argument.

The prosecution must prove by a preponderance of the evidence that a *Miranda* waiver was voluntary.  (*People v. Rundle* (2008) 43 Cal.4th 76, 114.)  "[A *Miranda* waiver] is involuntary if it is 'not "'the product of a rational intellect and a free will.'"' [Citation.]  The court in making a voluntariness determination 'examines "whether a defendant's will was overborne" by the circumstances surrounding the giving of [the *Miranda* waiver].' [Citation.]  Coercive police tactics by themselves do not render a defendant's [Miranda waiver] involuntary if the defendant's free will was not in fact overborne by the coercion and his decision to speak instead was based upon some other

12

consideration. [Citations.] The determination whether the authorities improperly coerced a defendant's [*Miranda* waiver] involves an evaluation of the totality of the circumstances, including the nature of the interrogation and the circumstances relating to the particular defendant." (*Ibid.*)

Here, the two psychological evaluations that Edgar relies upon were conducted to determine if Edgar was competent to participate in his own defense. The first evaluator reported that Spanish was Edgar's first language and that he did not understand many English words, such as "date," "emotions," "seasons" and "attorney" unless those words were simplified. The evaluator concluded that Edgar was "not competent to understand and participate in legal proceedings in a rational manner." The second evaluator found that Edgar had an "immature disposition," but was able to understand court procedures and the role of different parties.

Defense counsel did not present the psychological evaluations as evidence in support of Edgar's motion to suppress. Edgar was required to present that evidence with his motion if he wanted the trial court to consider it. (Evid. Code, § 550, subd. (a) ["The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence."].) Nevertheless, we conclude Edgar's *Miranda* waiver and postwarning statements were knowing, intelligent and voluntary.

Although Edgar may have been immature and had somewhat limited English comprehension, the record indicates he effectively communicated with Officer Horvat. Further, when Officer Horvat advised Edgar of his *Miranda* rights, she broke the

13

warnings down into three questions and after each question asked Edgar if he understood her questions. Edgar stated that he understood all three questions. Thereafter, Edgar provided a statement to Officer Horvat revealing the details of how he participated in the burglary. As we previously discussed, there was no evidence of police coercion to obtain Edgar's *Miranda* waiver or his incriminating statements. (*Ante*, part II.) Thus, we conclude Edgar's *Miranda* waiver and statements thereafter were voluntarily given and the trial court properly admitted that evidence.

Edgar's post-*Miranda* warning statements were substantially identical to his prewarning incriminating statements. Although we found Edgar's pre-*Miranda* warning statements should have been suppressed because they were obtained during a custodial interrogation (*ante*, part I), the admission of that evidence was harmless because his subsequent statements were voluntarily made after a proper *Miranda* warning.

### DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.


14